CHRISTINA SCHULTZE

*v.*

JOHN HENRY SCHULTZE.

[Submitted January 22d, 1908.   Decided January 29th, 1908.]

1. In a suit brought by a wife against her divorced husband, for the recovery by her from him, both real and personal property which she alleges she had transferred, or caused to be transferred, to him during the coverture, and which she seeks to set aside on the ground that they were obtained from her by him by means of duress or undue influence, consisting of threats and of actual bodily violence and of personal abuse, evidence examined and *held* to show that she was coerced by assaults and abuse to make the donation to him in question, and that she was entitled to relief in respect thereof.

2. The gift from the wife to the husband must be the free act of the wife; it must be without coercion or fraud. Anything beyond mere persuasive argument will not be permitted. It must proceed from an unfettered will, and an uncontrolled desire to benefit the donee.

On final hearing on pleadings and proofs.

*Mr. William S. Stuhr,* for the complainant.

*Mr. John J. Fallon,* for the defendant.

HOWELL, V. C.

The parties to this controversy are husband and wife. Their marriage took place in September, 1898, at which time the wife was forty-four years old and the husband twenty-seven. They were divorced from bed and board for extreme cruelty on the part of the husband by this court in a suit begun on July 5th, 1906, and in which the final decree was entered on March 25th, 1907.

This suit was begun in June, 1907, less than three months after the divorce decree. It has for its object the recovery by the wife from the husband of both real and personal property which she alleges she had transferred, or caused to be transferred, to him during the coverture. The property consists of

(1) $500 in cash; (2) a joint interest in a mortgage for $500 made by Eva Pohlmann to the husband and wife jointly on March 9th, 1905, on property on Seventh street in Hoboken; (3) a joint interest in a mortgage on which there is now $1,500 owing, made by Andrew J. Peters and wife to the complainant and defendant jointly, on March 2d, 1903; and (4) an undivided half interest in real estate situate at Bloomfield and Fifth streets, Hoboken, conveyed to the complainant and defendant jointly by Catherine H. Teel and others on January 4th, 1905. All the property and money from which the above-mentioned interests were derived belonged originally to the wife. When she was married to the defendant he was working at his trade of barber for a small weekly wage, and owned property from which he subsequently realized the sum of $450. The complainant at that time was the widow of one Foster, and she owned considerable real and personal property. Soon after the marriage the defendant besought the complainant to transfer to him a half interest in her estate. This she at first refused to do. She says that he then began to enforce his demands by threats of violence, which threats he carried out by the commission of actual and violent assaults on her, connected with such personal abuse as calling her vile names, and these, she says, terrified her into a compliance with his demands.

The first transaction from which the defendant derived any benefit was referred to in the testimony as the Peters transaction. Mrs. Schultze had, under her husband's will, a legacy of $5,000, which, at the hearing, was said to have been charged by his will upon property upon Seventh street, Hoboken. Some proceeding was had in the Hudson orphans court by virtue of which a public sale of this property was had; at the sale it was purchased by Mrs. Schultze and was conveyed to her by an administrator's deed in 1901. She sold the property to Mr. Peters in 1903 and took back from him a mortgage for $2,500, on which there is now $1,500 owing, the mortgage being made to herself and the defendant.

The next transaction referred to in the evidence was the conveyance of property on Seventh street, Hoboken, to Eva Breuder. The defendant refused to join in the execution of this deed unless

his wife, the complainant, would give him some portion of the consideration money. It ended by her giving him $500 in cash, upon receipt of which he joined her in transferring the property to Mrs. Breuder, Mrs. Schultze taking back a mortgage to herself and her husband for the sum of $3,000. This was subsequently reduced to $500, was canceled of record and a new mortgage made in 1905 by Eva Pohlmann, formerly Eva Breuder, and this was made to the complainant and the defendant.

The last transaction consisted of the purchase of property at the corner of Bloomfield and Fifth streets, Hoboken, the title to which was taken in the name of the complainant and the defendant.

The result of these transactions is that the complainant gave to the defendant $500 in cash, an undivided interest in a mortgage for $500, an undivided interest in a mortgage for $1,500, and an undivided interest in the real estate at the corner of Bloomfield and Fifth streets, Hoboken. And it is these transactions which the complainant seeks to set aside on the ground that they were obtained from her by her husband by means of duress or undue influence, consisting of threats and of actual bodily violence and of personal abuse.

It is undoubtedly true that a married woman may make a gift to her husband of the whole or any part of her real or personal estate; she may make a settlement upon her husband which is wholly voluntary, and it may be made in such a way as to be absolutely unimpeachable. Vice-Chancellor Emery states the law in *Curtis* v. *Crossley, 59 N. J. Eq. (14 Dick.) 358-365,* as follows: "The wife is protected against settlements made upon the husband through fear or improper influence on his part, and if she is able to establish this the settlement will be declared void; and, while a court of equity will scrutinize the transaction with jealousy in order to ascertain whether the settlement was made through fear of the husband, or whether the husband exercised improper influence over the wife, the burden is on the wife to show improper influence of the husband in order to avoid her settlement on him," citing cases. See, also, *Hall* v. *Otterson, 52 N. J. Eq. (7 Dick.) 522; affirmed, 53 N. J. Eq. (8 Dick.) 695; Black* v. *Black, 30 N. J. Eq. (3 Stew.) 215;*

*Slack* v. *Rees, 66 N. J. Eq. (21 Dick.) 447* (involving the relations between father and daughter), and *Albert* v. *Haeberly, 68 N. J. Eq. (2 Robb.) 664* (involving relations between a young woman and her step-mother).

If, therefore, the complainant has shown that the gifts made by her to her husband were the product of undue influence or threats of injury or actual violence, they must be held to have been obtained unfairly. If she makes a *prima facie* case on these grounds, then, by all the rules of procedure, the burden of countervailing it is thrown on the defendant, and if he does not meet the burden thus cast upon him the decree must go in favor of the complainant. The gift must be the free act of the wife; it must be without coercion or fraud. Anything beyond mere persuasive argument will not be permitted. It must proceed from an unfettered will, and an uncontrolled desire to benefit the donee.

The allegations of cruelty made by the wife are denied by the husband, both by his answer and by his evidence. I have examined the testimony with care since the hearing and have come to the conclusion that the wife was coerced by assaults and abuse to make the donation to the husband which she now seeks to recover back. The impression left upon my mind from reading the whole of the testimony of the wife is not removed in any degree by a careful perusal and study of the testimony of the defendant. His story is evasive, uncertain, and wholly unsatisfactory.

The husband's denial of cruelty, upon which his whole defence rests, is seriously shaken, if not entirely obliterated, by the decree above referred to, which divorced him and his wife from bed and board. This decree remains unappealed from and in full force; and must be taken to establish the fact of cruel treatment. It was insisted at the hearing that the transfers must stand, because the wife had had the benefit of independent legal advice. This she denies, her statement being that while Mr. Stuhr had acted as her counsel in many transactions, she did not consult him about these transfers to her husband because she was ashamed to let him know of the situation in which she had entangled herself.

It will be noted that in the various papers and transactions out of which this case arose there is no reservation by the wife of a power to revoke her so-called voluntary gift. It has been held in many cases that the absence of power of revocation from a voluntary settlement is evidence of mistake, and that sometimes that of itself would be sufficient to destroy the gift. *Garnsey* v. *Mundy, 24 N. J. Eq. (9 C. E. Gr.) 243; Martling* v. *Martling, 47 N. J. Eq. (2 Dick.) 122; While* v. *White, 60 N. J. Eq. (15 Dick.) 115.* Whether that rule applies to this case it is not necessary to determine, for the reason that sufficient evidence of unfair dealing on the part of the husband exists upon which a decree in favor of the wife can stand.

I will advise a decree in favor of the complainant.